UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Maria Bustillos | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| David Torres-Siegrist | Julia Sylva |
| | Martha Romero |
| | Kellen Davis |

**Proceedings:**   ZOOM HEARING RE: DEFENDANT LOURDES MORALES'
MOTION TO DISMISS AND TO STRIKE (Dkt. 46, filed on
SEPTEMBER 29, 2023)

DEFENDANT ANTHONY WILLOUGHBY II'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
FOR DAMAGES (Dkt. 47, filed on OCTOBER 8, 2023)

JOINT MOTION TO DISMISS AND STRIKE BY MANUEL
LOZANO AND RICARDO PACHECO (Dkt. 48, filed on
OCTOBER 9, 2023)

CITY OF BALDWIN PARK'S MOTION TO DISMISS AND TO
STRIKE (Dkt. 49, filed on OCTOBER 9, 2023)

## I.    INTRODUCTION

On January 18, 2023, plaintiffs DJCBP Corporation d/b/a/ Tier One Consulting
("Tier One Consulting") and David Ju initiated this action against defendants City of
Baldwin Park (the "City"); Robert Nacionales Tafoya, former Baldwin Park City
Attorney; Anthony Willoughby II ("Willoughby"), former Baldwin Park Deputy City
Attorney; Ricardo Pacheco, former Baldwin Park City Council member; Isaac Galvan,
former City Council Member of the City of Compton; Lourdes Morales, former Baldwin
Park Deputy City Clerk; and Manuel Lozano, former Baldwin Park Mayor.  Dkt. 1
("Compl.").  Plaintiffs' complaint alleged six claims for relief: (1) violations of the
Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

as against the individual defendants; (2) inverse condemnation under the Takings Clause of the Fifth Amendment, as against all defendants; (3) violations of due process under the Fifth Amendment and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 and Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), as against all defendants; (4) negligence, as against all defendants; (5) fraud, as against all defendants; and (6) a claim for declaratory relief. See generally Compl.

On February 10, 2023, defendant Willoughby filed a motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Dkt. 12. On February 23, 2023, the City filed a motion to dismiss plaintiffs' complaint. Dkt. 14. On March 23, 2023, the Court granted the City's motion to dismiss, finding that plaintiffs had failed to meet the pleading standards set forth in Federal Rule of Civil Procedure 8(a). Dkt. 20. The Court dismissed the complaint without prejudice and granted plaintiffs leave to amend within thirty days. Id. On April 14, 2023, the Court denied defendant Willoughby's motion to dismiss as moot. Dkt. 24.

On April 23, 2023, plaintiffs filed a first amended complaint (the "FAC"). Dkt. 25. The FAC names the same defendants named in the complaint and brings claims for (1) violations of RICO, as against the individual defendants; (2) inverse condemnation under the Takings Clause of the Fifth Amendment, as against defendant the City; (3) violations of due process under the Fifth Amendment and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 and Monell, 436 U.S. 658, as against all defendants; (4) negligent hiring and supervision, as against defendant the City; (5) fraud, as against all defendants; and (6) a claim for declaratory relief. See generally FAC.

On July 7, 2023, the City filed an answer. Dkt. 26. On July 13, 2023, the City filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 27. On July 16, 2023, defendant Willoughby filed a motion to dismiss the FAC. Dkt. 29 ("MTD"). On August 3, 2023, the Court denied the City's motion for judgment on the pleadings without prejudice as premature. Dkt. 33.

On August 28, 2023, the Court granted defendant Willoughby's motion to dismiss with twenty-one days' leave to amend. Dkt. 37. On August 31, 2023, defendants Lozano, Morales, and Pacheco filed a motion to dismiss. Dkt. 38. On September 7, 2023, defendants the City, Lozano, Morales, and Pacheco filed a stipulation to file responsive pleadings to the second amended complaint twenty-one days after its service

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

and thereby withdrew the August 31, 2023, motion to dismiss. Dkt. 40. On September 8, 2023, the Court approved the stipulation. Dkt. 42.

On September 18, 2023, plaintiffs filed a second amended complaint (the "SAC"). Dkt. 43. The SAC names the same defendants and brings claims for (1) violations of RICO, as against defendants Tafoya, Willoughby, Pacheco, Galvan, Lozano, and Does 1-50; (2) inverse condemnation under the Takings Clause of the Fifth Amendment, as against defendants the City, Tafoya, Willoughby, Lozano, and Pacheco; (3) violations of the Fifth Amendment and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 and Monell, 436 U.S. 658, as against defendants Tafoya, Willoughby, Lozano, Pacheco, and Morales; (4) negligent hiring and supervision, as against defendant the City; (5) fraud, as against all defendants; and (6) a claim for declaratory relief. See generally SAC.

On September 29, 2023, defendant Morales filed a motion to dismiss and to strike. Dkt. 46. On October 8, 2023, defendant Willoughby filed a motion to dismiss plaintiffs' second amended complaint for damages. Dkt. 47. On October 9, defendants Lozano and Pacheco filed a joint motion to dismiss and strike. Dkt. 48. That same day, defendant the City filed a motion to dismiss and to strike. Dkt. 49.

On October 16, 2023, plaintiffs filed an opposition to defendant Morales' motion to dismiss and to strike. Dkt. 54. On October 19, 2023, defendant Morales filed a reply in support of her motion. Dkt. 56. On October 30, 2023, plaintiffs filed oppositions to defendant Willoughby's motion to dismiss, defendant the City's motion to dismiss and to strike, defendants Lozano and Pacheco's motion to dismiss and to strike, and defendant Morales' motion to dismiss and to strike. Dkts. 57, 58, 59, 60. On November 6, 2023, defendant Morales filed a second reply in support of her motion; defendants Lozano and Pacheco filed a joint reply in support of their motion; defendant the City filed a reply in support of its motion; and defendant Willoughby filed a reply in support of his motion. Dkts. 61, 62, 63, 64.

On November 27, 2023, the Court held a hearing on defendant Morales' motion to dismiss and to strike; defendant Willoughby's motion to dismiss; defendants Lozano and Pacheco's joint motion to dismiss and to strike; and defendant the City's motion to dismiss and to strike. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　　　**'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

## II.　BACKGROUND

### A.　Commercial Cannabis Development Agreement with Defendant Willoughby and Tier One Consulting

As alleged, the background of this case is both tortured and convoluted. The following is a summary of the allegations in the SAC.

At the time of the relevant acts alleged, the City had four councilmembers, including Pacheco and Mayor Lozano. SAC ¶ 21. On August 16, 2017, the City adopted Ordinance No. 1400, which permitted cannabis operations. Id. ¶ 33. Applications for the Commercial Cannabis Program were to be accepted starting in August 2017. Id. ¶ 35. That same month, defendants Tafoya, Galvan, Willoughby, Pacheco, Lozano, and other unknown Doe defendants, conspired to create "Tier One Consulting" to "lure unsuspecting applicants into retaining Tier One in an effort to defraud them of hundreds of thousands of dollars on the pretense that the cannabis application process in Baldwin Park necessitated expertise and [City] 'friendships.'" Id. ¶¶ 35-36.

On October 18, 2017, defendant Tafoya, the City attorney, along with the City manager at the time, authored a staff report that recommended that the City Council ratify the retention of Willoughby & Associates to provide legal advice and negotiations for the City. Id. ¶¶ 41-42. Because defendant Willoughby is and was the managing partner of Willoughby & Associates, defendants could secure a license from the City, pretend to negotiate, and "flip that license" to a third party, while utilizing Tier One Consulting to "further their illicit scheme to obtain bribes." Id. ¶¶ 40, 44. The City Council ultimately ratified the retention of Willoughby & Associates, with votes by defendants Pacheco and Lozano. Id. ¶ 46. Yet, on December 6, 2017, less than two months later, the City, through Tafoya, was negotiating a Commercial Cannabis Development Agreement with "Anthony Willoughby, Tier One Consulting." Id. ¶ 48. Tafoya, Willoughby, Pacheco, and Lozano did not address the "glaring conflict" in order to "further their nefarious enterprise." Id. ¶ 51.

On November 30, 2017, Willoughby applied to the City for a commercial cannabis license. Id. ¶ 65. In his application, Willoughby intentionally provided an Articles of Organization from November 15, 2015, for a different entity, Tier 1 Consulting and Advocacy, LLC. Id. ¶ 68. No one flagged the discrepancies between the documents in Willoughby's application and the actual entity involved, Tier One Consulting. Id. ¶ 69.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

On July 18, 2018, Willoughby, as the "sole owner" of Tier One Consulting, was extended a Development Agreement ("DA") that had been approved by the Baldwin Park City Counsel and was codified in Ordinance 1427. Id. ¶¶ 71, 74. Even though Tier One Consulting did not legally exist, which defendants knew, Willoughby represented in the DA that the entity was a "duly organized and legally existing company or entity in good standing." Id. ¶¶ 70, 77-78.

### B.  Defendants Approach Plaintiff Ju About a Cannabis Investment

In the spring of 2018, defendant Galvan called plaintiff Ju about a "potential cannabis investment" and introduced plaintiff Ju to David Lee. Id. ¶¶ 83-85. Galvan initially proposed that plaintiff Ju acquire a property so that Lee and his partner Willoughby could operate a business as cannabis tenants out of the property after they obtained a cannabis license. Id. ¶ 87. On August 27, 2018, Lee met with plaintiff Ju and Galvan and explained that he had failed to obtain a property to lease but that the City had approved an application as of August 5, 2018. Id. ¶¶ 90-91. Lee sent a photo of the City DA, "evidencing approval of the municipal commercial cannabis authorization." Id. ¶ 92. Lee and Galvan convinced plaintiff Ju to purchase a property between 10,000 to 20,000 square feet in the "Green Zone" in Baldwin Park so that Lee and Willoughby could lease it. Id. ¶ 93. At that point, plaintiff Ju inquired as to who Willoughby was because Willoughby and Tier One Consulting were identified on the DA. Id. ¶ 94.

Plaintiff Ju asked if Tier One Consulting wanted him to purchase any particular properties, and Galvan returned a list of properties that were priced at "an outrageous premium." Id. ¶¶ 95, 97. In early September 2018, plaintiff Ju identified a potential property on his own that had multiple offers from other cannabis operators. Id. ¶¶ 99-100. Because his broker informed him that he would have to overbid on the property "without any contingencies other than a Phase one contamination report and close with an all-cash purchase" to beat the other offers, plaintiff Ju told Galvan that he needed the City's "absolute assurance . . . that the property qualified for an address change on the Tier One Consulting cannabis Development Agreement." Id. ¶¶ 102-03. After Tafoya provided such assurance, plaintiff Ju told his real estate broker to increase the purchase price to "1.7M," which was over $100k from the highest other offer, and escrow was opened. Id. ¶¶ 104, 106.

On October 2, 2018, Lee called plaintiff Ju and told him that Willoughby refused to pay a $50,000 mitigation fee that was due under the DA and that the City, through

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

Tafoya, would "cancel" the license if the fee was not paid within days. Id. ¶ 107. Lee also told plaintiff Ju that Willoughby wanted to be bought out of his portion of the license for $400,000. Id. ¶ 109. Galvan, Tafoya, and Willoughby convinced plaintiff Ju, given the escrow situation, to buy out Willoughby's 50% portion, and plaintiff Ju believes, based on the October 2022 unsealed pleas, that they created this "dire situation in an effort to simply flip a piece of paper that did not cost much." Id. ¶¶ 110-11. On October 8, 2018, plaintiff Ju met with Lee and Willoughby I, and they agreed that the purchase price would be $300,000 and the $50k "Police fees" due the next day. Id. ¶¶ 113-14. When plaintiff Ju took the corporate books he had received at the meeting to his company attorney, he learned that he was given corporate documents for Tier One Consulting and Advocacy, not Tier One Consulting. Id. ¶¶ 115, 117. Plaintiff Ju searched the Secretary of State's database and discovered that Tier One Consulting was not a legal entity. Id. ¶ 118. When plaintiff Ju told Lee that Tier One Consulting did not exist, Lee asserted that Willoughby I had given him the wrong corporate book but that the correct book would be sent to plaintiff Ju. Id. ¶¶ 119-20.

On October 9, 2018, plaintiff Ju met with Lee, Tafoya, and Galvan, about the buyout of Willoughby. Id. ¶ 121. Tafoya and Galvan guaranteed that the DA would be transferred and told him not to worry about "Tier One's status not being legitimate" when plaintiff Ju raised the issue. Id. ¶¶ 123, 125-26. Tafoya told plaintiff Ju to register an entity company, which ultimately was plaintiff DJCBP Corporation, using Tier One Consulting as a dba, and said that he would get the application for ownership change the following day. Id. ¶¶ 127-28. Plaintiff Ju reviewed a "corporate book" for Tier One Consulting and Advocacy, which was a partnership between Willoughby and Galvan for a "[c]annabis permit consultation business within various [cities] within LA County using their political connections." Id. ¶ 130. On October 25, 2018, Willoughby entered into a purchase agreement to "sell" his DA and cannabis license to plaintiff Ju. Id. ¶ 132. Plaintiff Ju retained consultants Rob Katherman and his wife Merilyn Greer, at Galvan's insistence, who completed the application for the "sale" of Tier One Consulting on December 2, 2018, which instead was the same application for which Willoughby and all other applications had paid only $2,857.50. Id. ¶¶ 134-35. Plaintiff Ju had been "swindled" by defendants to pay $900,000. Id. ¶ 136.

Plaintiff Ju made several payments to Galvan and to Willoughby for the Tier One buyout with assurances from Galvan that he and Tafoya "would get the transfer of the license done and that it was '100 percent legitimate.'" Id. ¶¶ 137-38, 141-43. Galvan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

also indicated he "would refund the entire amount." Id. ¶ 140. On December 10, 2018, Tafoya informed plaintiff Ju that the City would cancel the DA if he did not pay the $50,000 police fee that Willoughby had not paid. Id. ¶¶ 146-47. "Consultant Katherman asked Defendant [Tafoya] why [] any mitigation fees or police fees were due since no cannabis operations had been started." Id. ¶ 149. Tafoya responded that it was the same for everyone, which plaintiff Ju later learned was a lie. Id. ¶¶ 151, 155. Plaintiff Ju paid the $50,000 fee at Baldwin Park City Hall to save the DA. Id. ¶ 159. On January 31, 2019, plaintiff Ju paid an additional $50,000 in mitigation fees, and Tafoya promised "that he would delay further the mitigation fees several months after the change of address and ownership changes was approved." Id. ¶ 168. On April 3, 2019, Katherman and his wife informed plaintiff Ju that City Council had approved the application. Id. ¶ 169. While all other applicants, including Willoughby, paid the City $2,857.50 for the same application, plaintiff Ju "paid an additional $900,000.00 for what amounted to a piece of paper." Id. ¶¶ 170-72.

At the time Willoughby sold plaintiff Ju the cannabis license, both the Baldwin Park Commercial Cannabis Ordinance, Ordinance 1408, and Willoughby's DA itself prohibited their transfers. Id. ¶¶ 177-80. However, "purportedly on April 3, 2019, the City of Baldwin Park, by and through Defendant [Lozano], with absolutely no ratification or input from the [City Council], entered into this sham 'Amended' Development Agreement with Plaintiffs DJCBP [Corporation] as the entity and Plaintiff [Ju] as the signatory owner." Id. ¶ 181 (emphasis omitted). Although defendant Morales, the Deputy City Clerk, "notarized" the execution that asserted the DA was signed on April 3, 2019, plaintiff Ju was not in the San Gabriel Valley on April 3 and did not execute the DA until May 2019. Id. ¶¶ 182-83.

### C.    The Federal Guilty Pleas of Politicians

On October 7, 2022, a plea agreement in USA v. Gabriel Chavez was unsealed, revealing both collusion between Tafoya and Galvan and that Tafoya provided "a template for a sham consulting agreement" to Pacheco. Id. ¶¶ 192-97. That same day, a plea agreement in USA v. Ricardo Pacheco was unsealed that reinforces the collusion between Tafoya, Pacheco, and Galvan, and describes Tafoya as "being the architect of a collusive fraudulent cannabis scheme by the use of 'consultants' who would deliver 'development agreements' to their clients….not negotiated 'arms length' as ha[d] been represented numerous times" by Tafoya, Willoughby, and employees of the City. Id. ¶¶ 198-202.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

### D.    The Mitigation Fee Act

The City failed to comply with the Mitigation Fee Act, which adopts takings jurisprudence and requires an "essential nexus" between fees imposed in permits and a legitimate government end, with the amount of the fee being "roughly proportional" to the impact created. Id. ¶¶ 214, 216. The City "cannot legally justify the imposition of any mitigation fees under the development agreement scheme authored by a corrupt city attorney and self-dealing crooked politicians." Id. ¶ 217. While the Mitigation Fee Act requires that mitigation fees be deposited in a separate capital facilities fund, here, the mitigation fees have been placed in the General Fund, in violation of Government Code §66001(e). Id. ¶¶ 219-20. In contravention of Government Code § 66008, the mitigation fees have been used for "general revenue purposes" and not in a manner related to cannabis. Id. ¶¶ 223-24. The City has never identified for what the mitigation fees are being used, despite the requirement to do so in a yearly public report. Id. ¶¶ 225-27. Before producing a single ounce of commercial cannabis, plaintiffs Ju and DJCBP Corporation paid $340,000.00 in mitigation fees. Id. ¶ 228.

## III.   LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                   **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|----------|--------------------------|------|-------------------|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   DISCUSSION

### A.   Timeliness of Defendant Willoughby's Motion

In their opposition, plaintiffs argue that defendant Willoughby's motion to dismiss is untimely because plaintiffs served the SAC on September 18, 2023, but Willoughby did not file his motion until October 8, 2023, which was six days after the fourteen-day deadline to file a responsive pleading. Dkt. 57 at 1-2. In reply, Willoughby argues that the motion is timely because "[t]his circuit allows a motion under Rule 12(b) any time before the responsive pleading is filed." Aetna Life Ins. Co. v. Alla Medical Services, Inc., 855 F.2d 1470, 1474 (9th Cir. 1988). Dkt. 64 at 4. Because Willoughby had not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|----------|--------------------------|------|-------------------|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

filed a responsive pleading, he asserts that the motion is timely. Id. Moreover, he argues that it would be unjust for the Court to provide plaintiffs but not Willoughby an extension of time. Id. Finally, Willoughby contends that plaintiffs would not be prejudiced by the Court's deciding the motion on the merits. Id.

It appears to the Court that a responsive pleading was initially due fourteen days after service of the amended complaint. Judge Karen L. Stevenson, et al., Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial, Calif. & 9th Cir. Editions Ch. 9-D ¶ 9:290 (2023 ed.) ("Unless otherwise ordered by the court, defendant must plead or otherwise respond within 14 days after service of the amended complaint. [FRCP 15(a)(3)])." Willoughby did not file a motion to dismiss until October 8, 2023, which was after the fourteen-day deadline. However, at the hearing on November 27, counsel for Willoughby set forth good cause to justify a finding of excusable neglect. Therefore, the Court will still consider Willoughby's motion to dismiss.

### B. California's Statute of Limitations

Defendant Willoughby argues that pursuant to Sections 335.1 and 338 of the California Code of Civil Procedure, plaintiffs' negligence and fraud claims are untimely. Dkt. 47 at 14. Willoughby asserts that in California, negligence actions must be brought within two years, and actions based on fraud must be brought within three years. Id. While plaintiffs argue that California's delayed discovery rule applies, Willoughby argues that the SAC fails to explain why plaintiffs did not act after they learned about the alleged status of Tier One Consulting or why plaintiffs believed the alleged statements by Galvan and Lee "when the documents said that only Willoughby owned the license." Id. at 15. Willoughby contends that plaintiffs "are now looking for a way out" because they no longer want the license that they have used for over four years. Id. at 16.

Defendants Morales, Lozano, Pacheco, and the City contend that the statute of limitations would have run as of April 2022 as to the notarization and approval of the DA and the assessment of fees, which occurred around April 2019. Dkt. 46 at 11; dkt. 48 at 12; dkt. 49 at 14. Thus, because plaintiffs did not file the complaint until January 2023, the fraud claims are untimely. Dkt. 46 at 11; dkt. 48 at 12; dkt. 49 at 14.

Plaintiffs argue that their fraud claim is not barred by the statute of limitations because the City did not record the DA until June 25, 2019, and Emergency Rule No. 9 during Covid tolled the statute of limitations between April 6, 2020, and October 1, 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. |

Dkt. 57 at 8-9; dkt. 58 at 9; dkt. 59 at 5.  Further, plaintiffs contend that they are entitled to avail themselves of the delayed discovery rule because they adequately pled in the SAC that they were not aware of the corruption and collusion in the statutory development process until the pleas of Chavez and Pacheco were unsealed on October 7, 2022.  Dkt. 57 at 9; dkt. 58 at 10; dkt. 59 at 6.

In reply, Willoughby argues the indictments do not "have anything to do with Willoughby, and the SAC does not explain why said indictments served as the first and only basis for [p]laintiffs to be at least on inquiry notice after years of incurring costs and paying the fees for which [p]laintiff now complains years later."  Dkt. 64 at 10.  He also asserts that the SAC does not refer to Covid.  Id.

In reply, the City argues that the "alleged plea deals relate to different issues and thus cannot support the [delayed] 'discovery' of the issues" in this case.  Dkt. 63 at 8.  The plea deals in question allegedly relate to bribery, while this case is based on "the supposed overpriced sale of Tier 1, and the imposition of supposed 'mitigation fees.'"  Id.

It appears to the Court that this issue is better decided on a motion for summary judgment.  To the extent that Tier One Consulting was not a legitimate, legal entity, and plaintiffs may have been provided earlier notice of Tier One's status, the fact that Galvan and Tafoya are alleged to have reassured plaintiffs, suggesting that this should not be a cause for concern, may support a finding of delayed discovery.  Further, the plea deals disclose that there was reason to question the conduct of defendants who entered into or were discussed in the plea deals.  It appears that plaintiffs' knowledge of the facts disclosed in the plea agreements would be material to discovering the basis for their fraud claims in this case.  Moreover, whether there was delayed discovery depends on a factual determination which cannot readily be made on a motion to dismiss.  Accordingly, the Court denies defendants' motions to dismiss as they pertain to the statute of limitations for fraud.

## C.    Compliance with the California Tort Claims Act

Defendants Willoughby and the City argue that plaintiffs have failed to comply with the California Tort Claims Act because they have included only a conclusory statement and legal conclusion about their compliance with the Act instead of alleging facts regarding their compliance.  Dkt. 47 at 16; dkt. 49 at 12.  Thus, they argue that plaintiffs cannot bring their state law claims, such as negligence and fraud, against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

government actors or entities and that the Court must dismiss them accordingly.  Dkt. 47 at 16; dkt. 49 at 12, 14.

Plaintiffs only cite to SAC ¶ 19, which states that "[p]laintiffs have complied with the Government Tort Claims Act as required by law with respect to all causes of action brought herein pursuant to state law."  Dkt. 57 at 8; SAC ¶ 19.

In reply, Willoughby argues that plaintiffs fail to allege if, when, and how they submitted a notice of claim to a government entity.  Dkt. 64 at 12.

The Court finds that plaintiffs have failed to comply with the California Tort Claims Act ("CTCA").  See Butler v. Los Angeles Cnty., 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008) ("The CTCA applies to state law claims wherever those claims are brought, and the requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in federal court."); see also Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  "The [CTCA] requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part."  Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) (citation omitted).  Here, plaintiffs merely assert that they complied with the CTCA in a single paragraph in the SAC.  SAC ¶ 19.  Plaintiffs further refer to their Government Tort Claim only one other time in the SAC, alleging that "the notary fraud was brought to light by [p]laintiffs' Government Tort Claim."  Id. ¶ 184. However, plaintiffs must allege facts demonstrating their compliance with the CTCA to bring their state law claims.  See State of California v. Superior Ct., 32 Cal. 4th 1234, 1243 (2004) ("[W]e conclude that a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement."); Cardenas v. Cnty. of Tehama, 476 F. Supp. 3d 1055, 1070 (E.D. Cal. 2020) (granting a motion to dismiss because "[p]laintiffs have failed to allege facts demonstrating compliance with the CTCA" and only alleged compliance by way of "a mere conclus[ory] [statement]").  Accordingly, the Court grants defendants' motions to dismiss as to plaintiffs' state law claims against the City, with leave to amend to allege facts demonstrating their compliance with the CTCA.

### D.    Plaintiffs' First Claim for Violations of RICO

Defendants Willoughby, Morales, Lozano, and Pacheco argue that plaintiffs lack statutory standing to bring their Racketeer Influenced and Corrupt Organizations Act (RICO) claims pursuant to Shulman v. Kaplan, 58 F.4th 404 (9th Cir. 2023).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

Plaintiffs have not presented any new information that changes the Court's previous finding that <u>Shulman v. Kaplan</u> controls and bars plaintiffs from bringing their RICO claims. The Court has previously ruled on the statutory standing issue and declines to reconsider. Dkt. 37 at 12-13. Because plaintiffs lack statutory standing, the Court declines to consider the other arguments relating to the RICO claims. Further, the Court finds that amendment would be futile under these circumstances. Accordingly, the Court grants defendants' motions to dismiss plaintiffs' RICO claims, with prejudice.

  **E. Plaintiffs' Second Claim for Inverse Condemnation**

Defendants Lozano and Pacheco assert that they did not take anything from plaintiffs or receive any compensation. Dkt. 48 at 10. They further argue that the SAC, like the FAC, fails to identify "which payments constitute the claimed taking." <u>Id.</u> at 11. Finally, they argue the DA specifically prohibits plaintiffs from bringing an inverse condemnation or takings claim. <u>Id.</u>; <u>see also</u> SAC, exh. E at 13 ("Owner covenants . . . not to sue for damages . . . (ii) For the impairment or restriction of any right or interest conveyed or provided under, with, or pursuant to this [statutory agreement], including, without limitation, any impairment or restriction which Owner characterizes as a regulatory taking or inverse condemnation[.]").

Defendant the City similarly argues that the DA prohibits plaintiffs from suing the City for claims arising out of the DA and specifically bars claims for inverse condemnation. Dkt. 49 at 5, 8. Further, the City argues that while <u>Knick v. Twp. of Scott</u>, 139 S. Ct. 2162 (2019), removed the requirement to seek relief for a takings claim in state court first, it did not remove the requirement that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." <u>Id.</u> at 8; <u>Manufactured Home Communities Inc. v. City of San Jose</u>, 420 F.3d 1022, 1035 (9th Cir. 2005). The City contends that plaintiffs fail to allege "what if anything they did to obtain a 'final' decision from City concerning the fees paid to City." Dkt. 49 at 9.

Further, the City argues that the Mitigation Fee Act does not apply to the fees in this action. <u>Id.</u> Pursuant to Article 2, Section 2.1 of the DA, the DA "is intended to be a Statutory Development Agreement under and through Government Code Section 65864 *et seq.*" SAC, exh. E at 1 (italics added). The City argues that the Mitigation Fee Act does not include such fees under the definition of mitigation fees:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

(b) "Fee" means a monetary exaction other than a tax or special assessment . . . that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project, but does not include fees specified in Section 66477, fees for processing applications for governmental regulatory actions or approvals, fees collected under development agreements adopted pursuant to Article 2.5 (commencing with Section 65864) of Chapter 4 . . . .

Cal. Gov't Code § 66000(b). Moreover, the City asserts that the Mitigation Fee Act sets forth procedures for protesting fees or exactions, for attacking a fee amount, and for requesting an audit, yet plaintiffs do not allege efforts to seek relief pursuant to the statutory framework. Dkt. 49 at 9-10; see also Cal. Gov't Code §§ 66020(a), 66022(a), 66023.

In opposition, plaintiffs allege Lozano and Pacheco, as mayor and councilman, "authorized the [City] attorney to create a system that they knew was not a product of negotiations and contained terms that amounted to unconstitutional exactments." Dkt. 59 at 8. As to Morales, plaintiffs argue that Morales, as city clerk, conspired with and assisted Willoughby and Tafoya's "collection of unlawful exactments from plaintiffs." Dkt. 60 at 10. Further, plaintiffs argue that the Supreme Court overruled Williamson County v. Hamilton Bank in Knick v. Twp. of Scott, holding that an individual may bring a Section 1983 claim when the government violates the Takings Clause without first exhausting state remedies. Dkt. 59 at 8; dkt. 60 at 10. Thus, pursuant to Knick, plaintiffs contend that they did not need to exhaust remedies before bringing this action. Dkt. 59 at 8; dkt. 60 at 10.

In reply, Lozano and Pacheco argue that plaintiffs waive opposition by failing to address the arguments that Lozano and Pacheco did not take anything from them and that the DA precludes damages. Dkt. 62 at 6. Further, they assert that the SAC does not allege that Lozano or Pacheco "were individually involved in setting or collecting such fees," but moreover, "any 'taking by an individual' is *ultra vires* – not possible." Id. Finally, Lozano, Pacheco, and the City argue that while plaintiffs address Knick, they do not respond to the City's argument regarding the "finality" requirement. Id.; dkt. 63 at 5. The City further argues that plaintiffs have conceded this argument by failing to address it in their opposition. Accordingly, it argues that all claims against the City arising from the mitigation fee issues must be dismissed. Dkt. 63 at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

The Ninth Circuit has recognized that, while "in certain circumstances . . . money can be the subject of a taking," "the obligation to pay money in the tax and government services user fee context is not generally compensable under the Fifth Amendment because taxes and user fees are collected in exchange for government benefits to the payor." Ballinger v. City of Oakland, 24 F.4th 1287, 1296 (9th Cir.), cert. denied sub nom. Ballinger v. City of Oakland, California, 142 S. Ct. 2777, 213 L. Ed. 2d 1015 (2022). In most cases where courts have found a taking, "money . . . was taken from known persons in the form of a specific, identified property interest *to which those persons were already entitled.* Id. (emphasis added). On the other hand, Courts have not found a taking when a fee is "a monetary obligation triggered by a property owner's actions with respect to the use of their property, not a burden on the property owner's interest in the property." Id. at 1297.

Here, plaintiffs appear to construe the mitigation fees as unconstitutional takings. SAC ¶¶ 259-263. The Court disagrees. It appears that plaintiffs sought a license to operate a cannabis enterprise and, in exchange for a license from the City, agreed to pay certain mitigation fees. The Court does not construe the imposition of mitigation fees in this case as a taking within the meaning of the Fifth Amendment. Accordingly, plaintiffs' claim for inverse condemnation is dismissed without prejudice. Plaintiffs may amend their claim to more adequately allege a taking within the meaning of the Fifth Amendment.

**F.    Plaintiffs' Third Claim for Violations of Civil Rights Per 42 U.S.C. Section 1983**

In their third claim, plaintiffs allege violations of their civil rights pursuant to 42 U.S.C. Section 1983 based on impermissible takings under the Fifth Amendment and allege municipal liability pursuant to Monell. Defendants Morales, Lozano, and Pacheco argue that the "taking" of fees does not involve any individual defendants. Dkt. 46 at 9; dkt. 48 at 11. Morales argues that plaintiffs cannot establish Monell liability because "[t]here is no allegation that the City of Baldwin Park or Morales had a policy relating to notarization or any policy at all involving Morales." Dkt. 46 at 9. Similarly, Lozano and Pacheco argue that "[t]here is no allegation that [the] City had a policy relating to collection of such fees that utilized the participation of Lozano or Pacheco," but plaintiffs instead allege only one instance of Lozano and Pacheco allegedly directing the collection of fees by Tafoya and Willoughby. Dkt. 48 at 11-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|----------|--------------------------|------|-------------------|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

In opposition, plaintiffs argue that Morales used her office and her position as Deputy City Clerk to assist the other individual defendants "in defrauding plaintiffs out of the purchase price of the license as well as the continued unlawful attempt to collect unconstitutional exactments from plaintiffs in the form of 'mitigation fees.'" Dkt. 60 at 6-7, 10. Morales contends that this conclusory statement is based on allegations plaintiffs seek to add rather than any present in the SAC. Dkt. 56 at 5; dkt. 61 at 3.

In opposition to Lozano and Pacheco, plaintiffs argue that "at the behest" of the mayor and councilman, employees of the City were ordered "to exact millions of dollars from cannabis owner operators such as plaintiffs who for the longest time were not producing any commercial cannabis." Dkt. 59 at 4. In reply, Lozano and Pacheco argue that this claim fails because the "takings" violation upon which it relies also fails. Dkt. 62 at 6. Further, they contend the SAC does not allege their involvement with the fees. Id. at 7.

Defendant Willoughby argues that he was not working for the City and was thus not acting under color of law when the sale occurred in 2018 and that there is no evidence he took anything from plaintiffs or deprived them of any right. Dkt. 47 at 13. Moreover, Willoughby contends that plaintiffs voluntarily purchased the DA and agreed to its associated fees, such that nothing was taken from them. Id. at 14. Finally, citing to Shulman, Willoughby contends that "it is completely unclear as to how [p]laintiffs could seek damages for injury to cannabis interests in which Congress explicitly disclaimed the existence of any property rights." Id. at 13-14; dkt. 64 at 9.

Plaintiffs argue that Willoughby collected unconstitutional mitigation fees when he served as a Deputy City Attorney. Dkt. 57 at 7. Further, plaintiffs cite the SAC, which alleges that Willoughby with Tafoya, as city attorneys, "continuously used the threat of cancellation of municipal authorization as well as the use of 'compliance hearings,' code enforcement as well as threats to rescind municipal authority and notify the state of California's Department of Cannabis Control to extort fees from plaintiffs" that they "knew were unlawful and unconstitutional." Id. at 7-8; SAC ¶¶ 277, 293.

In reply, Willoughby argues that plaintiffs do not allege how Willoughby is "personally responsible" for plaintiff Ju's decision to pay the fees. Dkt. 64 at 9.

Although plaintiffs do not bring this claim against the City, the City addresses the "impermissibly vague and incomprehensible" claim because it refers to and seeks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

relief from the City. Dkt. 49 at 10. According to the City, plaintiffs allege a taking of fees but "do not allege that City or the individuals had a policy, that amounted to deliberate indifference of [p]laintiffs' rights, and that the policy is the moving force behind the deprivation of their rights." Id. at 10-11. The City asserts that the SAC does not address the Court's questions regarding which of the payments constitute the alleged taking and whether such payments were required pursuant to the DA. Id. at 11.

In opposition, plaintiffs assert that in this action:

> [U]nlawful exactions are disguised as "negotiated development agreements:"
> 1) A yearly exactment of 10 dollars a square foot based on 22,000 square feet irrespective of the fact that the plaintiffs' property is less than 10,000 square feet. 2) $55,000 a year police "impact fee." 3) Fees due immediately instead of when a business becomes operational.

Dkt. 58 at 5. Plaintiffs argue that the same unlawful exactments also give rise to a § 1983 claim against the City pursuant to Monell. Id. Plaintiffs contend that Monell liability may attach when a municipality (1) implements an unconstitutional custom or policy that results in the violation of rights; (2) fails to supervise; and (3) when a final policy-maker is involved in, or ratifies, the conduct underlying the violation of rights. Id. at 6. Here, plaintiffs allege that the City had a widespread "custom or practice" of collecting unconstitutional mitigation fees, that the City Attorney's office failed to supervise its employees and "was not equipped to understand the intricacies of development agreements," and that the City Council ratified the alleged violation of rights by "direct[ing] City officials including Tafoya and Willoughby to collect overdue mitigation fees which were unconstitutional exactments." Id. at 6-7 (capitalization omitted). Plaintiffs also argue that there is no longer an exhaustion of remedies requirement in constitutional takings cases. Id. at 8.

In reply, the City realleges that, while the Supreme Court has removed the exhaustion requirement for takings claims, it left intact the "finality" requirement, which "requires the [p]laintiff to first seek relief from the local government entity charged with implementing the regulations." Dkt. 63 at 5 (internal quotations omitted). Here, "there are no allegations that the City acted with finality, even, *de facto* finality, to [p]laintiffs." Id. (capitalization omitted). The City also argues that the plaintiffs failed to address the City's argument that the "civil rights claim was incomprehensible since it was asserted against the individuals, not the City." Id. at 6 (capitalization omitted). It also claims that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

plaintiffs' various theories of <u>Monell</u> liability (ratification, failure to supervise, and official policy/custom) each fail because plaintiffs cite to facts that are not in the SAC and the claims otherwise lack factual support.  <u>Id.</u>

It appears that plaintiffs' Section 1983 claims are all based on the underlying claim of an unconstitutional taking.  As discussed above regarding plaintiffs' claim for inverse condemnation, the Court finds that the charging of mitigation fees in this case does not appear to constitute a taking as presently alleged.  The Court has previously asked plaintiffs to allege additional and more specific facts describing the taking, and they have thus far failed to do so.  Accordingly, the Court dismisses plaintiffs' Section 1983 claims without prejudice.  Plaintiffs are granted leave to amend to more adequately describe the underlying constitutional bases for their Section 1983 claims against the respective defendants.

### G.  Plaintiffs' Fourth Claim for Negligence

The City cites <u>Lopez v. Southern California Rapid Transit District</u>, 40 Cal. 3d 780 (1985), to argue that plaintiffs fail to allege facts regarding the City's negligent hiring and supervision to meet the heightened standard required for tort claims brought against the government.  Dkt. 49 at 12; <u>see also Lopez</u>, 40 Cal. 3d at 795 ("[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable.").  Further, while plaintiffs allege that their injury was the fees, the City contends:

> There are no allegations that 1. City owed a duty to Plaintiffs; 2. that City did anything in its hiring/supervising individual defendants that did not meet the standard of care to breach its duty (no allegations about what City could have or should have done in its policies), especially since Galvan never served City in an official capacity; or 3. that injury to the Plaintiffs was a proximate result.

Dkt. 49 at 12.  Moreover, the City asserts that the Court should strike the incomplete allegation of compliance with the Tort Claims Act and dismiss the related claims.  <u>Id.</u>

The City argues that there are no allegations regarding the City's hiring of anyone, such that "[t]he SAC at most alleges, without support, negligent supervision of city-employed defendants."  <u>Id.</u> at 13.  According to the City, plaintiffs make conclusory statements regarding the City's knowledge without alleging how the City became or should have become knowledgeable of defendants' acts, what the City should have done,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

or what caused plaintiffs' alleged injury. Id. at 12-13. Regarding the allegation that the City did not investigate whether Tafoya should continue to control the cannabis program after the raid of his house and office, the City asserts that plaintiffs do not allege whether "the City knew or should have known of the raid, or what the raid concerned." Id. at 13. Similarly, it argues that plaintiffs do not allege any facts "relevant to the retention of Morales" or that the City had knowledge of the "purported conflict of interest" between Tafoya and Willoughby. Id. As to Galvan, it argues it owed no duty because it does not have a relationship with Galvan, the mayor of a different city. Id. at 11-12.

In opposition, plaintiffs argue that the City is "vicariously liable for any injuries or damages . . . proximately caused by an act or omission of any [City] employee" pursuant to California government Code § 815.2(a). Dkt. 58 at 8. They further allege that the City "failed to supervise its elected and public employees, including Sylvia who utilized their positions to ultimately thwart the sale of [p]laintiff's property." Id.

In reply, the City alleges that plaintiffs' argument on this front is non-responsive and nonsensical because plaintiffs have simply cut-and-pasted their argument from a different case. They contend that Sylvia is counsel for the City and "is not alleged to be involved with this case in the SAC." Dkt. 63 at 7. There are no allegations of "any 'commercial buildings' whose 'sale' was 'thwarted' in the SAC." Id.

As mentioned above, plaintiffs' failure to comply with the California Tort Claims Act bars them from bringing their negligence claim against the City. Accordingly, the Court grants the City's motion to dismiss, with leave to amend.

### H. Plaintiffs' Fifth Claim for Fraud

Morales alleges that his notarization of the DA was a mistake. Dkt. 46 at 10. He further argues that plaintiffs have not pled the elements of fraud because they failed to allege that Morales intended to deceive or induce them into entering the transaction, that plaintiffs "*relied* upon the representations, believing them to be true," or that plaintiffs consequently were injured. Id. at 10-11.

In opposition, plaintiffs assert that Morales attested under penalty of perjury that plaintiff Ju signed the "Amended" DA in her presence on April 3, 2019, prepared the meeting Agenda that stated there would be a "second reading" of a location transfer, "not a sale of a pre-existing" DA, and failed to make available the meeting minutes. Dkt. 60 at 7. According to plaintiffs, the production of all of the DAs, which Morales and Tafoya

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

"intentionally delayed . . . for months on end," revealed the "Amended" DA was the only DA of the more than twenty to which Morales was privy that was actually notarized.  Id.

In reply, Morales argues that plaintiffs impermissibly raised additional facts in their opposition and thus the motion to dismiss must be granted without leave to amend. Dkt. 56 at 6.  Moreover, even if made, these allegations allegedly would not support a fraud claim because "there is no allegation that [p]laintiffs knew or relied upon any false representation, or that the notarization caused injury."  Id.

Defendant Willoughby argues that not only have plaintiffs failed to allege that Willoughby "made a single representation" to plaintiff Ju, but also plaintiffs received "exactly what was promised" by Lee, Galvan, and Tafoya.  Dkt. 47 at 17.  Moreover, Willoughby asserts that plaintiffs admit they consulted with counsel and were informed before entering into any transactions.  Id. at 18.  Finally, Willoughby argues that the doctrine of unclean hands further bars plaintiffs' recovery because the SAC reveals that plaintiff Ju bribed Galvan "to guarantee that [the] City would act according to [his] desires" and give him the benefit over which he now brings this action.  Id.

In opposition, plaintiffs argue that the SAC contains several allegations of fraud by Willoughby, "from the manner in which he procured the license misrepresenting the existence of a fake entity, to the manner in which he flipped the license selling it to [p]laintiff J[u] to his continued misrepresentations made to commercial cannabis owners that they were legally obligated to pay unconstitutional mitigation fees."  Dkt. 57 at 8. Further, plaintiffs argue that plaintiff Ju does not have unclean hands because the SAC shows that defendants swindled plaintiff Ju, not that plaintiff Ju bribed anyone.  Id. at 10.

In reply, Willoughby argues that plaintiff Ju "conspired with his friends behind Willoughby's back to acquire Willoughby's development agreement and cannabis license" and "made the informed decision to . . . be bound by the publicly available fees therein."  Dkt. 64 at 11.  Willoughby further argues plaintiffs do not substantively address his unclean hands arguments, such that they concede plaintiff Ju knew only Willoughby's name was on the license and "had no reason to pay Galvan any sum of money."  Id. at 12.

Defendants Lozano and Pacheco argue that plaintiffs failed to comply with Federal Rule of Civil Procedure 9(b) because they have not alleged that Lozano or Pacheco "participated in the alleged 'scheme' in any way."  Dkt. 48 at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

In opposition, plaintiffs cite the SAC to argue they allege several examples of Lozano and Pacheco's fraudulent behavior:

> LOZANO, in the midst of the collusion and corruption, released a media statement on behalf of the CITY that all staff and officials were doing a terrific job at monitoring and making sure that the cannabis industry was following the letter of the law. LOZANO and PACHECO were voting on matters involving WILLOUGHBY II such as his retention as an outside CITY Law firm while at the same time discussing his negotiations with TAFOYA in closed session for a Cannabis Permit. LOZANO was also privy to the many instances of TAFOYA shaking up CANNABIS operators with e-mails for political fundraisers for LOZANO and COUNCILWOMAN GARCIA with Defendant GALVAN on these emails.

Dkt. 59 at 4-5; SAC ¶¶ 340, 342-43.

In reply, Lozano and Pacheco argue that none of the arguments support plaintiffs' fraud claim but instead reflect an effort by plaintiffs to include "allegations of [Lozano and Pacheco's] prior bad acts, not anything having to do with [p]laintiffs or the situation faced by [p]laintiffs." Dkt. 62 at 7.

The City argues that plaintiffs have failed to meet the heightened factual requirement for asserting a claim for fraud, a state law claim, against a public entity. Dkt. 49 at 14. According to the City, plaintiffs cite to "scandalous materials such as plea deals on other matters" and Rukli, Inc., which distributes cannabis, to allege that the City maintains a "fraudulent position." Id. at 14. However, the City argues the "attenuated" allegations of fraud against the City do not involve the alleged scheme involving the purchase of the DA at issue. Id.

In opposition, plaintiffs argue that they have adequately plead a fraud claim against the City based on the acts of the City's elected public officials. Dkt. 58 at 9. In particular, plaintiffs cite to fraud allegedly perpetrated by Morales, Tafoya, Willoughby, Lozano, and Pacheco. Id.

In reply, the City argues that plaintiffs failed to allege "how the City became knowledgeable regarding the alleged acts of its employees." Dkt. 63 at 7. The City contends that plaintiffs' allegations regarding Tafoya and Willoughby do not involve the City, and there is no allegation that plaintiffs knew of or relied on (1) the notarization by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

Morales or (2) statements by Lozano with respect to the Cannabis program within the city. Id. at 8.

"The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th at 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004). As mentioned above, plaintiffs cannot bring their fraud claim against the City until they comply with the California Tort Claims Act. Moreover, it appears to the Court that plaintiffs have failed to plead the elements of fraud as to defendants Morales, Pacheco, Lozano, and the City. Plaintiffs allege that they suffered an injury because of the involvement of defendants in the corrupt cannabis DA process. However, plaintiffs have failed to allege what representations each defendant made and whether each defendant knew the representations were false. Plaintiffs must further link their injury to their justifiable reliance on defendants' misrepresentations. As plaintiffs have failed to plead each element of fraud, their fraud claims are insufficient. Plaintiffs' fraud claims are independently insufficient because they fail to meet the specificity requirements of Federal Rule of Civil Procedure 9(b). Accordingly, the Court grants defendants' motions to dismiss plaintiffs' fraud claims, with leave to amend the SAC.

**I.     Plaintiffs' Sixth Claim for Declaratory Relief**

The City contends that that "[i]t is now clear that the 'takings' and Monell claim is identical to the Mitigation Fee Act claim." Dkt. 49 at 14. For all of the aforementioned reasons presented by the City, the City argues that the declaratory judgment claim as to the Mitigation Fee Act fails. Id.

Declaratory relief is available when there is an ongoing controversy. To the extent plaintiffs are seeking a determination of their rights under the DA, plaintiffs may validly do so. The same holds true for the role of mitigation fees in this action. Accordingly, the Court denies the City's motion to dismiss as to plaintiffs' claim for declaratory relief.

**J.     Defendants' Motions to Strike**

Defendants Morales, Lozano, Pacheco, and the City request that the Court strike from the SAC exhibits F (the Chavez plea deal), G (the Pacheco plea deal), and I (the press release regarding Galvan's arrest), and paragraphs 30-32, 53-64, 192-213, and 322-39, because they "relate to an 'illegal grow' by a defendant's relative, unrelated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | Date | November 27, 2023 |
|----------|--------------------------|------|-------------------|
| Title    | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

development agreements by others, bribery in exchange for votes, and a monopoly in transportation, which are unrelated to the present allegations." Dkt. 46 at 11-13; dkt. 48 at 13; dkt. 49 at 16. Defendants argue that plaintiffs seek to allege guilt in this action based upon the criminal conduct and "supposed guilt in other unrelated matters." Id.

Defendants argue that plaintiffs waive any opposition to defendants' motions to strike because they fail to address the merits of these motions in their oppositions. Dkt. 56 at 6-7; dkt. 61 at 4-5; dkt. 62 at 2-3, 8; dkt. 63 at 2-3. They contend that the Court should therefore grant the motions to strike both on the merits and under waiver. Dkt. 56 at 6-7; dkt. 61 at 4-5; dkt. 62 at 2-3, 8; dkt. 63 at 2-3.

A motion to strike material from a pleading is made pursuant to Fed. R. Civ. P. 12(f). Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." A Fed. R. Civ. P. 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material. The essential function of a Fed. R. Civ. P. 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Fed. R. Civ. P. 12(f) are disfavored. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

The Court finds that it would be inappropriate to strike the Chavez plea deal and the Pacheco plea deal because they relate to the timeliness of plaintiffs' discovery of the facts underlying the SAC and to plaintiffs' compliance with the statute of limitations. However, it appears to the Court that there is no purpose for including in the pleadings the press release regarding Galvan's arrest or the allegations relating to the "black market grow" by Lozano's relative, Rukli, Inc.'s alleged monopoly on the transportation of cannabis, and cannabis consulting entities. While Exhibit I and SAC ¶¶ 30-32, 53-64, 205-13, 322-39, do not belong in the pleadings, plaintiffs may introduce this evidence at trial pursuant to Rule 404(b) to show defendants' knowledge or for another admissible purpose. Accordingly, the Court grants in part and denies in part defendants' motions to strike.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-CV-00384-CAS (PVCx) | | Date | November 27, 2023 |
|---|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | | |

### K.    Motion for Sanctions

Defendant Morales requests that plaintiffs be sanctioned for each party's attorneys' fees because they "knowingly . . . advanced a position without merit" and failed to "substantively oppose[] [Morales'] motion to dismiss and strike in any manner based on the existing operative SAC."  Dkt. 56 at 8.

The Court denies Morales' request for sanctions at this time, but reserves judgment on sanctions for decision at the conclusion of the case.

## V.    CONCLUSION

In accordance with the foregoing, the Court DENIES defendants' motions to dismiss as they pertain to the statute of limitations and as to plaintiffs' claim for declaratory relief and Morales' request for sanctions.  The Court GRANTS defendants' motions to dismiss plaintiffs' state law claims against the City, RICO claims, inverse condemnation claims, Section 1983 claims, and fraud claims.  The Court GRANTS in part and DENIES in part defendants' motions to strike.  Plaintiffs may file a third amended complaint on or before December 22, 2023.  Defendants are directed to respond on or before January 19, 2024.

IT IS SO ORDERED.

|  | 00 | : | 21 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |