UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                           **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANT LOURDES MORALES'
MOTION TO DISMISS AND MOTION TO STRIKE (Dkt. 72, filed
on JANUARY 18, 2024)

DEFENDANT CITY OF BALDWIN PARK'S MOTION TO
DISMISS AND MOTION TO STRIKE (Dkt. 73, filed on
JANUARY 19, 2024)

DEFENDANT ANTHONY WILLOUGHBY II'S MOTION TO
DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR
DAMAGES (Dkt. 74, filed on JANUARY 19, 2024)

JOINT MOTION TO DISMISS AND STRIKE BY MANUEL
LOZANO AND RICARDO PACHECO (Dkt. 75, filed on
JANUARY 19, 2024)

DEFENDANT ROBERT NACIONALES TAFOYA'S MOTION
TO DISMISS AND MOTION TO STRIKE (Dkt. 76, filed on
JANUARY 19, 2024)

## I.     INTRODUCTION

On January 18, 2023, plaintiffs DJCBP Corporation d/b/a/ Tier One Consulting
("Tier One Consulting") and David Ju initiated this action against defendants City of
Baldwin Park (the "City"); Robert Nacionales Tafoya, former Baldwin Park City
Attorney; Anthony Willoughby II ("Willoughby"), former Baldwin Park Deputy City
Attorney; Ricardo Pacheco, former Baldwin Park City Council member; Isaac Galvan,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

former Mayor of the City of Compton; Lourdes Morales, former Baldwin Park Deputy City Clerk; and Manuel Lozano, former Baldwin Park Mayor. Dkt. 1 ("Compl."). Plaintiffs' complaint alleges six claims for relief: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as against the individual defendants; (2) inverse condemnation under the Takings Clause of the Fifth Amendment, as against all defendants; (3) violations of due process under the Fifth Amendment and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 and Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), as against all defendants; (4) negligence, as against all defendants; (5) fraud, as against all defendants; and (6) a claim for declaratory relief. Id. Jurisdiction is founded on federal question jurisdiction based on plaintiffs' Section 1983 claims.[1] Id.

On February 10, 2023, defendant Willoughby filed a motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 12. On February 23, 2023, the City filed a motion to dismiss plaintiffs' complaint. Dkt. 14. On March 23, 2023, the Court granted the City's motion to dismiss, finding that plaintiffs had failed to meet the pleading standards set forth in Federal Rule of Civil Procedure 8(a). Dkt. 20. The Court granted plaintiffs leave to amend within thirty days. Id. On April 14, 2023, the Court denied defendant Willoughby's motion to dismiss as moot. Dkt. 24.

On April 23, 2023, plaintiffs filed a first amended complaint (the "FAC"). Dkt. 25. The FAC names the same defendants named in the complaint and brings claims for (1) violations of RICO, as against the individual defendants; (2) inverse condemnation under the Takings Clause of the Fifth Amendment, as against defendant the City; (3) violations of due process under the Fifth Amendment and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 and Monell, 436 U.S. 658, as against all defendants; (4) negligent hiring and supervision, as against defendant the City; (5) fraud, as against all defendants; and (6) a claim for declaratory relief. Id.

On July 7, 2023, the City filed an answer. Dkt. 26. On July 13, 2023, the City filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 27. On July 16, 2023, defendant Willoughby filed a motion to dismiss the

---

[1] The RICO claim was dismissed with prejudice on November 27, 2023. Dkt. 66.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|----------|--------------------------|------|----------------|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

FAC.  Dkt. 29.  On August 3, 2023, the Court denied the City's motion for judgment on the pleadings without prejudice as premature.  Dkt. 33.

On August 28, 2023, the Court granted defendant Willoughby's motion to dismiss with twenty-one days' leave to amend.  Dkt. 37.  On August 31, 2023, defendants Lozano, Morales, and Pacheco filed a motion to dismiss.  Dkt. 38.  On September 7, 2023, defendants the City, Lozano, Morales, and Pacheco filed a stipulation to file responsive pleadings to the second amended complaint twenty-one days after its service and withdrew the August 31, 2023 motion to dismiss.  Dkt. 40.  On September 8, 2023, the Court approved the stipulation.  Dkt. 42.

On September 18, 2023, plaintiffs filed a second amended complaint (the "SAC"). Dkt. 43.  The SAC names the same defendants and brings claims for (1) violations of RICO, as against defendants Tafoya, Willoughby, Pacheco, Galvan, Lozano, and Does 1-50; (2) inverse condemnation under the Takings Clause of the Fifth Amendment, as against defendants the City, Tafoya, Willoughby, Lozano, and Pacheco; (3) violations of the Fifth Amendment and Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983 and Monell, 436 U.S. 658, as against defendants Tafoya, Willoughby, Lozano, Pacheco, and Morales; (4) negligent hiring and supervision, as against defendant the City; (5) fraud, as against all defendants; and (6) a claim for declaratory relief.  Id.

On September 29, 2023, defendant Morales filed a motion to dismiss and to strike. Dkt. 46.  On October 8, 2023, defendant Willoughby filed a motion to dismiss the SAC. Dkt. 47.  On October 9, defendants Lozano and Pacheco filed a joint motion to dismiss and strike.  Dkt. 48.  That same day, defendant the City filed a motion to dismiss and to strike.  Dkt. 49.

On November 27, 2023, the Court held a hearing and (1) denied defendants' motions to dismiss as they pertain to the statute of limitations and as to plaintiffs' claim for declaratory relief and Morales' request for sanctions; (2) granted defendants' motions to dismiss plaintiffs' state law claims against the City and plaintiffs' RICO claims, inverse condemnation claims, Section 1983 claims, and fraud claims; and (3) granted in part and denied in part defendants' motions to strike.  Dkt. 66.  The Court permitted plaintiffs to file a third amended complaint.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

On December 22, 2023, plaintiffs filed a third amended complaint (the "TAC"). Dkt. 70. The TAC names the same defendants and brings claims for (1) writ of mandate against the City and request for preliminary injunction; (2) inverse condemnation/Fifth Amendment Takings Clause violation brought pursuant to 42 U.S.C. § 1983, as against all individual defendants except Galvan; (3) <u>Monell</u> liability pursuant to 42 U.S.C. § 1983, as against the City; (4) negligence, as against all defendants; (5) fraud, as against all defendants; and (6) a claim for declaratory relief. <u>Id.</u>

On January 17, 2024, plaintiffs and defendants the City, Lozano, Morales, Pacheco, and Tafoya filed a stipulation to strike paragraphs 31-33, 54-56, 28, and 377-394 of the TAC. Dkt. 71. On January 19, 2024, the Court granted the stipulation and ordered that the aforementioned paragraphs be stricken from the TAC and not referred to by any party in this action. Dkt. 78.

On January 18, 2024, defendant Morales filed a motion to dismiss and to strike. Dkt. 72. On January 19, 2024, defendant the City filed a motion to dismiss and to strike.[2] Dkt. 73. That same day, defendant Willoughby filed a motion to dismiss the TAC. Dkt. 74. Defendants Lozano and Pacheco filed a joint motion to dismiss and strike. Dkt. 75. Defendant Tafoya also filed a motion to dismiss and to strike. Dkt. 76.

On February 5, 2024, plaintiffs filed oppositions to defendant the City's motion to dismiss and to strike, defendant Morales' motion to dismiss and to strike, defendant Willoughby's motion to dismiss, defendants Lozano and Pacheco's motion to dismiss and to strike, and defendant Tafoya's motion to dismiss and to strike. Dkts. 79, 80, 81, 82, 83. On February 12, 2024, defendants Morales, the City, Lozano and Pacheco, Tafoya, and Willoughby filed replies in support of their motions. Dkts. 84, 85, 86, 87, 88.

---

[2] Plaintiffs argue that the City should be barred from bringing its motion to dismiss because "[t]he [c]laims in the TAC as to the [City] remain the same as those contained in the First Amended Complaint to which the City not only answered but also filed an unsuccessful Motion for Judgment on the Pleadings." Dkt. 79 at 4. The City argues that plaintiffs waived this argument by failing to raise it when the City filed its motion to dismiss the SAC. Dkt. 85 at 2-3. While the City contends that considering the City's motion to dismiss would further judicial economy, it asserts that the Court may instead treat its motion as a motion for judgment on the pleadings if necessary. <u>Id.</u> at 3-4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

On February 26, 2024, the Court held a hearing on defendant Morales' motion to dismiss and to strike; defendant the City's motion to dismiss and to strike; defendant Willoughby's motion to dismiss the TAC; defendants Lozano and Pacheco's joint motion to dismiss and strike; and defendant Tafoya's motion to dismiss and to strike. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    Commercial Cannabis Development Agreement with Defendant Willoughby and Tier One Consulting

The following is a summary of the allegations in the TAC.

At the time of the relevant acts alleged, the City had four councilmembers, including Pacheco and Mayor Lozano. TAC ¶ 22. On August 16, 2017, the City adopted Ordinance No. 1400, which permitted cannabis operations. Id. ¶ 34. Applications for the Commercial Cannabis Program were to be accepted starting in August 2017. Id. ¶ 36. That same month, defendants Tafoya, Galvan, Willoughby, Pacheco, Lozano, and other unknown Doe defendants, conspired to create "Tier One Consulting" "to attract applicants into hiring them, by claiming that navigating the cannabis application process in Baldwin Park required special expertise and connections within the [City]. The aim was to defraud applicants of hundreds of thousands of dollars." Id. ¶¶ 36-37.

On October 18, 2017, defendant Tafoya, the City Attorney, along with the City manager at the time, authored a staff report that recommended that the City Council ratify the retention of Willoughby & Associates to provide legal advice and negotiations for the City. Id. ¶¶ 42-43. Because defendant Willoughby is and was the managing partner of Willoughby & Associates, defendants could acquire a license from the City, pretend to negotiate, and "flip that license" to a third party, while utilizing Tier One Consulting "as a front to advance their unlawful plan of obtaining bribes." Id. ¶¶ 41, 45. The City Council ultimately ratified the retention of Willoughby, with votes by defendants Pacheco and Lozano. Id. ¶ 47. Yet, on December 6, 2017, less than two months later, the City, through Tafoya, was negotiating a Commercial Cannabis Development Agreement with "Anthony Willoughby, Tier One Consulting." Id. ¶ 49. Tafoya,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

Willoughby, Pacheco, and Lozano did not address the "glaring conflict" in order to "further their nefarious enterprise." Id. ¶ 52.

On November 30, 2017, Willoughby applied to the City for a commercial cannabis license. Id. ¶ 65. In his application, Willoughby intentionally provided Articles of Organization from November 15, 2015, for a different entity, Tier 1 Consulting and Advocacy, LLC. Id. ¶ 68. No one flagged the discrepancies between the documents in Willoughby's application and the actual entity involved, Tier One Consulting. Id. ¶ 69. On July 18, 2018, Willoughby, as the "sole owner" of Tier One Consulting, was extended a Development Agreement ("DA") that had been approved by the Baldwin Park City Counsel and was codified in Ordinance 1427. Id. ¶¶ 71, 74. Even though Tier One Consulting did not legally exist, which defendants knew, Willoughby represented in the DA that the entity was a "duly organized and legally existing company or entity in good standing." Id. ¶¶ 70, 77-78.

### B.    Defendants Approach Plaintiff Ju About a Cannabis Investment

In the spring of 2018, defendant Galvan called plaintiff Ju about a "potential cannabis investment" and introduced plaintiff Ju to David Lee. Id. ¶¶ 83-85. Galvan initially proposed that plaintiff Ju acquire a property so that Lee and his partner Willoughby could operate a business as cannabis tenants out of the property after they obtained a cannabis license. Id. ¶ 87. On August 27, 2018, Lee met with plaintiff Ju and Galvan and explained that he had failed to obtain a property to lease but that the City had approved an application for a cannabis license as of August 5, 2018. Id. ¶¶ 90-91. Lee sent a photo of the City DA, "evidencing approval of the municipal commercial cannabis authorization." Id. ¶ 92. Lee and Galvan convinced plaintiff Ju to purchase a property between 10,000 to 20,000 square feet in the "Green Zone" in Baldwin Park so that Lee and Willoughby could lease it. Id. ¶ 93. At that point, plaintiff Ju inquired as to who Willoughby was because Willoughby and Tier One Consulting were identified on the DA. Id. ¶ 94.

Plaintiff Ju asked if Tier One Consulting wanted him to purchase any particular properties, and Galvan returned a list of properties that were priced at "an outrageous premium." Id. ¶¶ 95, 97. In early September 2018, plaintiff Ju identified a potential property on his own (1516 Virginia Ave.) that had multiple offers from other cannabis operators. Id. ¶¶ 99-100. Because his broker informed him that he would have to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|----------|--------------------------|------|----------------|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

overbid on the property "without any contingencies other than a Phase one contamination report and close with an all-cash purchase" to beat the other offers, plaintiff Ju told Galvan that he needed the City's "absolute assurance . . . that the property qualified for an address change on the Tier One Consulting cannabis Development Agreement." Id. ¶¶ 102-03. After Tafoya provided such assurance, plaintiff Ju told his real estate broker to increase the purchase price to "1.7M," which was over $100,000 from the highest competing offer, and escrow was opened. Id. ¶¶ 104, 106.

On October 2, 2018, Lee called plaintiff Ju and told him that Willoughby refused to pay a $50,000 "mitigation fee" that was due under the DA and that the City, through Tafoya, would "cancel" the license if the fee was not paid within days. Id. ¶ 107. "This was all a ruse to have [plaintiff Ju] begin paying unconstitutional development agreement fees on [Willoughby's] behalf even before the transaction had been consummated." Id. ¶ 108. Lee also told plaintiff Ju that Willoughby wanted to be bought out of his portion of the license for $400,000. Id. ¶ 109. Galvan, Tafoya, and Willoughby convinced plaintiff Ju, given the escrow situation, to buy out Willoughby's 50% portion, and plaintiff Ju believes, based on the October 2022 unsealed pleas, that they created this "dire situation in an effort to simply flip a piece of paper that did not cost much." Id. ¶¶ 110-11. On October 8, 2018, plaintiff Ju met with Lee and Willoughby I, and they agreed that the purchase price would be $300,000 and the $50,000 in "Police fees" due the next day. Id. ¶¶ 113-14. When plaintiff Ju took the corporate books he had received at the meeting to his company attorney, he learned that he was given corporate documents for Tier One Consulting and Advocacy, not Tier One Consulting. Id. ¶¶ 115, 117. Plaintiff Ju searched the Secretary of State's database and discovered that Tier One Consulting was not a legal entity. Id. ¶ 118. When plaintiff Ju told Lee that Tier One Consulting did not exist, Lee asserted that Willoughby I had given him the wrong corporate book and that the correct book would be sent to plaintiff Ju. Id. ¶¶ 119-20.

On October 9, 2018, plaintiff Ju met with Lee, Tafoya, and Galvan, about the buyout of Willoughby. Id. ¶ 121. Tafoya and Galvan guaranteed that the DA would be transferred and told him not to worry about "Tier One's status not being legitimate" when plaintiff Ju raised the issue. Id. ¶¶ 123, 125-26. Tafoya told plaintiff Ju to register an entity company, which ultimately was plaintiff DJCBP Corporation, using Tier One Consulting as a dba, and said that he would get plaintiffs the application for ownership change the following day. Id. ¶¶ 127-28. Plaintiff Ju received a Tier One corporate book

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

on October 13, 2018, but the content did not align with the name on the book's cover; he also reviewed a "corporate book" for Tier One Consulting and Advocacy, which was a partnership between Willoughby and Galvan for a "[c]annabis permit consultation business within various [cities] within LA County using their political connections." Id. ¶¶ 129-30. On October 25, 2018, Willoughby entered into a purchase agreement to "sell" his DA and cannabis license to plaintiff Ju. Id. ¶ 132. Plaintiff Ju retained consultants Rob Katherman and his wife Merilyn Greer, at Galvan's insistence, who completed the application for the "sale" of Tier One Consulting on December 2, 2018, which instead was the same application for which Willoughby and all other applicants had paid only $2,857.50. Id. ¶¶ 134-35. Plaintiff Ju had been "swindled" by defendants to pay $900,000. Id. ¶ 136.

Plaintiff Ju made several payments to Galvan and to Willoughby for the Tier One buyout with assurances from Galvan that he and Tafoya "would get the transfer of the license done and that it was '100 percent legitimate.'" Id. ¶¶ 137-38, 141-43. Galvan also indicated "multiple times that he would refund the entire amount." Id. ¶ 140. On November 23, 2018, plaintiff Ju "agreed to release $30,000 to the seller of the property and agreed to give up the initial deposit ($51,750.00) in the event of a default on the real property [purchase sale agreement]." Id. ¶ 145. On December 10, 2018, Tafoya informed plaintiff Ju that the City would cancel the DA if he did not pay the $50,000 police fee that Willoughby had not paid. Id. ¶¶ 146-47. "Consultant Katherman asked Defendant [Tafoya] why [] any mitigation fees or police fees were due since no cannabis operations had been started." Id. ¶ 149. Tafoya responded that it was the same for everyone, which plaintiff Ju later learned was a lie. Id. ¶¶ 151, 155. Plaintiff Ju paid the $50,000 fee at Baldwin Park City Hall to save the DA. Id. ¶ 159. Although plaintiff Ju had paid Galvan $200,000 for the Tier One buyout, the DA still had not been transferred to him. Id. ¶¶ 166-67. On January 31, 2019, plaintiff Ju paid an additional $50,000 in mitigation fees, and Tafoya promised "that he would delay further the mitigation fees several months after the change of address and ownership changes was approved." Id. ¶ 168. On April 3, 2019, Katherman and his wife informed plaintiff Ju that the City Council had approved the application. Id. ¶ 169. While all other applicants, including Willoughby, paid the City $2,857.50 for the same application, plaintiff Ju "paid an additional $900,000.00 for what amounted to a piece of paper." Id. ¶¶ 170-72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. |

At the time Willoughby sold plaintiff Ju the cannabis license, both the Baldwin Park Commercial Cannabis Ordinance, Ordinance 1408, and Willoughby's DA itself prohibited their transfers. Id. ¶¶ 177-80. However, "on April 3, 2019, the City of Baldwin Park, led by Defendant Lozano and without any ratification or input from the [City Council], purportedly entered into a deceptive 'Amended' Development Agreement with Plaintiff[] DJCBP [Corporation] as the entity and Plaintiff Ju as the signatory owner." Id. ¶ 181. Although defendant Morales, the Deputy City Clerk, "notarized" the execution that asserted the Amended DA was signed on April 3, 2019, plaintiff Ju was not in the San Gabriel Valley on April 3 and did not execute the DA until May 2019. Id. ¶¶ 183-85. Item Number 10 of the April 3, 2019 Agenda prepared by Morales included a second reading of "An Ordinance of the City Council of the City of Baldwin Park, California, Authorizing the City of Baldwin Park to Enter into a Development Agreement with Tier One Consulting for the Cultivation and/or Manufacturing of Cannabis at the Real Property Located at 1516 Virginia Avenue (APN 8558-029-031) within the City of Baldwin Park." Id. ¶¶ 186-87. However, the minutes for the April 3, 2019 City Council meeting are not publicly available to confirm whether the City Council approved a sale of the DA. Id. ¶ 188. Plaintiffs' Amended DA was the only DA notarized out of more than twenty others to which Morales was privy, reflecting "an intentional act of fraud performed at the behest of [Tafoya, Lozano, Pacheco, and Willoughby] to conceal their flipping of a license." Id. ¶¶ 193-94.

**C.     The Federal Guilty Pleas**

On October 7, 2022, a plea agreement in USA v. Gabriel Chavez was unsealed, revealing both collusion between Tafoya and Galvan and that Tafoya provided "a template for a sham consulting agreement" to Pacheco. Id. ¶¶ 206-11. That same day, a plea agreement in USA v. Ricardo Pacheco was unsealed, providing further details regarding the collusion between Tafoya, Pacheco, and Galvan, and describing Tafoya as "being the architect of a collusive fraudulent cannabis scheme by the use of 'consultants' who would deliver 'development agreements' to their clients….not negotiated 'arms length' as ha[d] been represented numerous times" by Tafoya, Willoughby, and employees of the City. Id. ¶¶ 212-16. On September 13, 2023, an indictment against Galvan was unsealed, which alleges that Galvan, Pacheco, and Tafoya participated in a bribery scheme relating to Baldwin Park's marijuana permits. Id. ¶¶ 219-29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|----------|--------------------------|------|----------------|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

### D.     The Mitigation Fee Act

The City failed to comply with the Mitigation Fee Act, which adopts takings jurisprudence and requires an "essential nexus" between fees imposed in permits and a legitimate government end, with the amount of the fee being "roughly proportional" to the impact created. Id. ¶¶ 230, 232. The City "cannot legally justify the imposition of over a million dollars on plaintiff or any other entity when absolutely no cannabis operations have ever taken place at 15023 Ramona Blvd." Id. ¶ 233. While the Mitigation Fee Act requires that mitigation fees be deposited in a separate capital facilities fund, here, the mitigation fees have been placed in the General Fund, in violation of Government Code §66001(e). Id. ¶¶ 234-35. In contravention of Government Code § 66008, the mitigation fees have been used for "general revenue purposes" and not in a manner related to cannabis. Id. ¶¶ 238-39. The City has never identified for what purpose the mitigation fees are being used, despite the requirement to do so in a yearly public report. Id. ¶¶ 240-42.

### E.     Disguised Unconstitutional Exactments

Tafoya reused a preexisting form DA that had been previously used for billboards within the City and testified in his deposition "that he has no recollection of the intent behind his use of the term 'mitigation fees' within the [DAs] at issue." Id. ¶¶ 243-46. The City told owner operators that the terms in the DAs were "non-negotiable." Id. ¶ 249. "The same nonsensical formula of $10 per square foot based on an imaginary 22,000 square feet, irrespective of the size of an owner's building, is contained in every [DA] at paragraph 5.2," and nearly every DA further contains a yearly "police fee" of $50,000. Id. ¶¶ 252, 255. The accrual of mitigation fees began immediately in every DA except for one, even though many owner operators were still non-operational almost three years after they signed DAs. Id. ¶¶ 256-57. For plaintiffs and other owner operators, "over a million dollars in mitigation fees accrued without a single drop of cannabis ever being produced or any type of operations within their buildings due to the lack of an issuance of a certificate of occupancy" five to six years after they signed DAs. Id. ¶ 260. The updated ordinance now calculates fees based on real square footage, does not include a yearly police fee, and does not accrue fees until the owner operator receives a Certificate of Occupancy. Id. ¶¶ 264-66.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|----------|--------------------------|------|----------------|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

### F.   Termination of Plaintiffs' License

In December 2023, plaintiffs received notice that the City's Special Counsel and defense counsel in this matter, Julia Sylva, revoked plaintiffs' Municipal Authorization, which they have appealed pursuant to the City's Cannabis Ordinance No. 1408 Section 127.16. Id. ¶¶ 267-71. Although the DA provides for a 30-day period to cure a default or breach, plaintiffs' DA was "automatically terminated for nonpayment of commercial cannabis fees due to the City of Baldwin Park." Id. ¶¶ 274-75. Plaintiffs are "the only owner operator within the City to suffer a 'termination' and request to the [Department of Cannabis Control ("DCC")] to revoke a state cannabis license," even though "[n]ot a single owner/operator within the [City] is current on fees under existing [DAs]." Id. ¶¶ 276-78. The City informed plaintiffs in November 2023 that it would "red tag" their building and request the DCC's termination of their state license if they did not drop the instant lawsuit. Id. ¶¶ 285, 287. Plaintiffs contend that, by following through with these threats, the City retaliated against them for exercising their First Amendment right to petition the government. Id. ¶ 288.

## III.   LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                 'O'

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).  A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   DISCUSSION

### A.   Plaintiffs' Section 1983 Claims for Inverse Condemnation and for Monell liability

Morales, the City, Lozano, Pacheco, Tafoya, and Willoughby assert that the Court has already determined that the fees plaintiffs paid in exchange for the cannabis license cannot constitute a taking under the Fifth Amendment.  Dkt. 72 at 11; dkt. 73 at 12; dkt. 74 at 8-9 dkt. 75 at 11; dkt. 76 at 12.  Morales further argues that she cannot be held

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

liable for the "taking" of fees because the allegations against her in the TAC relate only to the notarization of the DA and missing minutes. Dkt. 72 at 11. Lozano and Pacheco argue that plaintiffs do not allege anything specific to either defendant relating to a "taking," including that they were "involved with either the policy to collect or set 'fees' to be taken from [p]laintiffs." Dkt. 75 at 12. Tafoya contends that he cannot be held individually liable for a "taking" because the allegations regarding his efforts to collect fees as a City employee could only be relevant to the City's liability. Dkt. 76 at 12. According to Willoughby, the CSA "provides that [p]laintiffs do not have a property right as it relates to cannabis, the manufacturing of cannabis, and any money related to cannabis." Dkt. 74 at 9-10. Thus, Willoughby argues that there was no "taking" because plaintiffs did not have a property right in the money or property related to cannabis. Id. at 10. Because the Fifth Amendment applies to public entities, Willoughby further argues that plaintiffs cannot sue him as an individual for inverse condemnation. Id.

The City asserts that Article 8.1 of the DA prohibits plaintiffs from suing the City for any claim, and specifically for inverse condemnation, arising out of the DA. Dkt. 73 at 6, 11-12. It further argues that the Mitigation Fee Act does not apply to the DA at issue, which "is intended to be a Statutory Development Agreement under and through Government Code Section 65864 et seq." Id. at 7, 11; see also TAC, Exh. F § 2.1. Because the statute states that it "does not include . . . fees collected under development agreements adopted pursuant to Article 2.5 (commencing with Section 65864) of Chapter 4," the City asserts that plaintiffs cannot invoke the Mitigation Fee Act here. Dkt. 73 at 7; see also Gov't Code §66000(b). Moreover, the City contends that plaintiffs know the fees at issue are not "mitigation fees" because they did not seek relief through the statutory framework set forth in the Mitigation Fee Act. Dkt. 73 at 12-13.

In opposition, plaintiffs argue that they have sufficiently alleged that the monetary exactions constitute a taking under the Fifth Amendment. Dkt. 79 at 9-10; dkt. 81 at 4-5. Further, they assert that their claim is "specifically predicated on the unenforceability of the subject Development Agreement." Dkt. 79 at 10. According to plaintiffs, the DA is invalid because the ordinance prohibited the transfer or sale of a cannabis license, the DA's recordation was improper, and Tier One was not a formal entity when the City entered into the DA with it. Id. at 10-11. Plaintiffs contend that Willoughby assisted with Tafoya's "consulting scam" by taking plaintiffs' money after a "consultant" told plaintiffs what the terms of the DA would be without negotiation. Dkt. 81 at 5. Finally,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

they assert that they have established personal liability pursuant to § 1983 because they "have sufficiently alleged [the individual defendants], acting under color of law, caused the deprivation of a federal right, specifically violation of the Fifth Amendment's Taking Clause." Dkt. 80 at 4-5; dkt. 81 at 5-6; dkt. 82 at 5-6; dkt. 83 at 5-6 (citation omitted).

Plaintiffs have had three opportunities to amend their complaint to more adequately describe how the exactions constitute a taking within the meaning of the Fifth Amendment for purposes of their § 1983 and Monell claims. At oral argument, counsel for plaintiffs asserted that plaintiffs paid $900,000 for a preexisting DA procured by Willoughby, but received nothing.[3] It appears to the Court from the allegations in the TAC that plaintiffs sought a cannabis license and were willing to pay the requisite fees throughout the process to obtain a DA.[4] Plaintiffs ultimately received a DA in exchange for their payments of certain fees, including "mitigation fees." The City later automatically terminated plaintiffs' DA because it claimed that plaintiffs failed to pay the applicable fees due to the City. See TAC, Exh. K. As the Court explained in its November 27, 2023 order, "the obligation to pay money in the tax and government services user fee context is not generally compensable under the Fifth Amendment because taxes and user fees are collected in exchange for government benefits to the

---

[3] At various times, plaintiffs have contended that they were induced to pay different sums of money. Plaintiffs first explain that Willoughby wanted to be bought out of his portion of the DA for $400,000, which plaintiffs agreed to do. TAC ¶¶ 109-10. Plaintiffs then assert that "[t]he [p]urchase price ultimately was $300,000 and the $50k 'Police fees' which were due on 10/9/2018." Id. ¶ 114. Even though every other applicant paid only $2,857.50 for the DA application, plaintiffs assert that they paid $900,000 "when the sale transaction ultimately was completed." Id. ¶¶ 135-36. Later, plaintiffs allege that they have paid $340,000 in mitigation fees to date. Id. ¶ 409. After reviewing the TAC, which is plaintiffs' fourth version of the complaint, it is still unclear to the Court how these fees and payments are related to each other, to the DA, and to the Takings Clause claim. It is further unclear whether plaintiffs paid these fees and payments to the individual defendants, to the City, or to both.

[4] Moreover, it is not clear whether plaintiffs even have a cognizable property interest in money paid to cultivate cannabis. See Kent v. Cnty. of Yolo, 411 F. Supp. 3d 1118, 1123 (E.D. Cal. 2019) ("[F]ederal law does not recognize any protectible property interest in the cultivation of cannabis.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

payor." <u>Ballinger v. City of Oakland</u>, 24 F.4th 1287, 1296 (9th Cir. 2022). Because plaintiffs have not sufficiently alleged the underlying claim of an unconstitutional taking in the TAC, plaintiffs' <u>Monell</u> claim must likewise fail. Further, plaintiffs may not seek monetary relief for a taking from the individual defendants in either their individual or their official capacities. <u>See Marina Point Dev. Assocs. v. Cnty. of San Bernardino</u>, No. 5:19-CV-00964-RGK-KS, 2020 WL 2375221, at *3 (C.D. Cal. Feb. 19, 2020) (finding that "monetary relief is unavailable against persons sued in their individual capacities for a taking" because, "[b]y definition, the taking is not by a private person for private purposes, and the property does not belong to a private person who must accordingly pay just compensation out of private funds") (quoting <u>Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n</u>, 125 F. Supp. 3d 1051, 1079 (D. Haw. 2015); <u>see also Los Molinos Mut. Water Co. v. Ekdahl</u>, No. 2:21-CV-01961-DAD-DMC, 2023 WL 6386898, at *15 (E.D. Cal. Sept. 29, 2023) ("In short, the Eleventh Amendment bars inverse condemnation actions brought under the Fifth Amendment's Taking Clause in federal court against state officials in their official capacities even if the claim is construed 'as one seeking injunctive relief against state officers to force them to adhere to the Constitution, as in <u>Ex parte Young</u>.'") (citations omitted). Accordingly, the Court **GRANTS** defendants' motions to dismiss plaintiffs' claim for inverse condemnation and claim for <u>Monell</u> liability, with prejudice. [5]

---

[5] Plaintiffs allege that the City violated plaintiffs' First Amendment rights by retaliating against them for bringing this action. "To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity;[] and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." <u>Blair v. Bethel Sch. Dist.</u>, 608 F.3d 540, 543 (9th Cir. 2010). The Court is not persuaded that the City "red tagged" plaintiffs' building or terminated the DA *because of* the instant lawsuit. Rather, it appears that the City terminated "all land use entitlements and permits" pursuant the terms of the DA, which provides that the DA is automatically terminated upon the owner operator's failure to pay fees. TAC, Exh. F §§ 3.6-3.6.1. Thus, plaintiffs have not pled a viable First Amendment retaliation claim to seek relief pursuant to § 1983.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|----------|--------------------------|------|----------------|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

### B.     Supplemental Jurisdiction

Because there is no viable claim that a constitutional right has been violated, plaintiffs' inverse condemnation and <u>Monell</u> claims fail.  While the Court dismisses plaintiffs' federal claims with prejudice, the Court finds that it would be appropriate to retain supplemental jurisdiction over plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367.  <u>See</u> <u>Herman Fam. Revocable Tr. v. Teddy Bear</u>, 254 F.3d 802, 806 (9th Cir. 2001) ("This requirement that the supplemental state-law claims be dismissed where the district court had no underlying original jurisdiction must be distinguished from the district court's discretionary authority to retain jurisdiction over state-law claims where it has dismissed on the merits federal claims over which it did have original jurisdiction.").  The Court therefore addresses each of plaintiffs' remaining claims below.

### C.     Plaintiffs' Claim for Writ of Mandate Against the City and Request for Preliminary Injunction

Plaintiffs contend that the City "red tagged" their building and requested the termination of their state license by the DCC as retaliation for their bringing the instant lawsuit.  TAC ¶¶ 285, 287-88.  Plaintiffs seek a writ of mandate to compel the City to reinstate plaintiffs' "municipal authority to conduct commercial cannabis activity," to notify the state and the DDC of such reinstatement, and to retract its prior request for the revocation of plaintiffs' state license.[6]  <u>Id.</u> ¶¶ 290-91.  They further request that the Court issue a preliminary injunction ordering the City to reinstate plaintiffs' municipal authority.  <u>Id.</u> ¶ 298.  According to plaintiffs, they "have no plain, speedy, and adequate remedy at law except by way of peremptory writ of mandate and/or injunctive relief."  Dkt. 79 at 8.

It appears that plaintiffs assert an entirely new claim and seek relief that they have not previously sought in this action.  However, the Court did not grant plaintiffs leave to assert a new claim in the TAC.  In its November 27, 2023 order, the Court granted leave for plaintiffs to cure specific defects in the SAC.  Accordingly, the Court finds plaintiffs' claim for a writ of mandate and request for a preliminary injunction to be improper and

---

[6] The City asserts that "[i]t fails to occur to [p]laintiffs that seeking to enforce the development agreement with the sought after Writ is precisely the opposite of seeking to find the Development Agreement unenforceable."  Dkt. 85 at 5 (emphasis omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

dismisses plaintiffs' first claim. However, this dismissal is without prejudice to plaintiffs bringing an appropriate motion to add a new claim.

**D.    Plaintiffs' Claim for Negligence**

Although plaintiffs assert a claim for negligence against all defendants, they do not make any allegations as to how any individual defendant acted negligently. Thus, the Court construes this claim as brought against the City only.

1.    Compliance with the Government Tort Claims Act

The City argues that plaintiffs failed to put the City on reasonable notice of their negligence claim in their Tort Claims submission because they reference "negligence" only one time in the conclusion. Dkt. 73 at 15.

In opposition, plaintiffs argue that courts use the test of substantial compliance with the Government Tort Claims Act. Dkt. 79 at 14; see also Pac. Tel. & Tel. Co. v. Cnty. of Riverside, 106 Cal. App. 3d 183, 188 (Ct. App. 1980) ("Under this test, the court must ask whether sufficient information is disclosed on the face of the filed claim 'to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit. . . .'") (citation omitted). Plaintiffs assert that they provided the City with all available information at the time of their claim, including the pleas of Pacheco and Chavez, which described the unsupervised conduct of the elected officials that "facilitated the fraud, corruption and criminal acts that took place causing plaintiffs damages." Id. at 13-14. Thus, plaintiffs contend that the City had reasonable notice of plaintiffs' negligent supervision claim. Id. at 13-14.

In reply, the City argues that plaintiffs do not cite to anything in their Tort Claims submission that would meet the "substantial compliance" test, as they do not allege a duty, breach, causation, or the City's knowledge. Dkt. 85 at 9. According to the City, the irrelevant plea deals did not provide the City with reasonable notice of plaintiffs' claim for negligent hiring/supervision. Id.

The purpose of the Government Claims Act is to provide a public entity with presentations of claims "disclos[ing] sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation." Connelly v. Cnty. of Fresno, 146 Cal. App. 4th 29, 38 (2006). So long as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                'O'

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

these two purposes are effectuated, the statutory requirements "should be given a liberal construction to permit full adjudication on the merits." Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 449 (2004) (quoting Minsky v. City of Los Angeles, 11 Cal. 3d 113, 123 (1974)). Moreover, "[o]nly where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the complaint barred." Stockett, 34 Cal. 4th at 447 (citation omitted). Here, plaintiffs provided sufficient information in their Tort Claims submission to permit the City to investigate plaintiffs' negligence claim. The TAC properly elaborates on plaintiffs' negligence claim "but is predicated on the same fundamental actions or failures to act by the defendants." Id. Accordingly, the Court finds that plaintiffs complied with the Government Tort Claims Act.

        2.    Negligence Claim

    Plaintiffs allege that the City failed to supervise its employees, which permitted its employees to defraud plaintiffs or otherwise make representations to plaintiffs that caused them to invest in a cannabis license. Plaintiffs contend that the City should have been on notice of the culture of corruption within the City's cannabis process because of the FBI raids on Tafoya's house and office, the "purported conflict of interest" between Willoughby and Tafoya, and the violations of the City's own ordinance. See dkt. 73 at 16. Based on the allegations in the TAC, it is possible that the City may be liable for the acts of its employees under a respondeat superior theory. Thus, the Court finds that the viability of this claim is better decided on a motion for summary judgment. Accordingly, the Court **DENIES** the City's motion to dismiss plaintiffs' negligence claim.

    **E.    Plaintiffs' Claim for Fraud**

    Defendants Morales, Lozano, Pacheco, Willoughby, and the City argue that plaintiffs fail to plead the elements of fraud, such as that plaintiffs justifiably relied on or suffered any injury from defendants' alleged misrepresentations, which defendants further knew were false. See generally dkts. 72, 73, 74, 75, 76. They additionally argue that plaintiffs fail to plead their fraud claim with sufficient specificity or particularity. Dkts. 72, 73, 74, 75, 76.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

While plaintiffs allege that Morales fraudulently notarized the DA and failed to maintain meeting minutes, Morales argues that plaintiffs cannot establish their fraud claim because they do not allege any reliance upon or injury from Morales' actions. Dkt. 72 at 12-13. The City and Pacheco assert that the TAC does not attribute any fraudulent statement to them, other than Lozano's public statements that the City lawfully and properly managed its cannabis industry. Dkts. 73, 75; see also TAC ¶ 30. However, the City argues that plaintiffs do not allege whether the City or Lozano knew those statements were false or whether plaintiffs knew of, relied upon, or were harmed by those statements. Dkt. 73 at 17. Willoughby further contends that plaintiffs made an informed business decision, such that they do not have a basis for their fraud claim. Id. at 14-15. While plaintiffs "complain of having been sold Willoughby's debt," Willoughby argues that the "debt" represents the mitigation fees plaintiffs would have incurred anyway to operate a cannabis business. Id. at 15-16.

In opposition, plaintiffs argue that the City was willfully blind or the City's officials "conspired to maintain" a corrupt cannabis program. Dkt. 79 at 15. Plaintiffs assert that the fraudulent activity alleged in the TAC "culminate into a sham agreement that the [City] to this day attempts to collect on going so far as to cancelling plaintiffs' commercial cannabis license for not dropping this lawsuit." Id. at 15-16. Plaintiffs cite several paragraphs of the TAC to argue that they have sufficiently alleged that Morales perpetrated fraud, including notary fraud, to conceal defendants' "flipping of a license." Dkt. 80 at 5-6; see also TAC ¶ 194. With regard to Willoughby, they assert that he used a fake entity, Tier One Consulting, to enter into a DA with the City.[7] Dkt. 81 at 7. According to plaintiffs, Willoughby, along with Tafoya, "not only sold to plaintiffs a license in violation of the [City's] ordinance, but [also] conspired with Defendant [Morales] to cover up the illegal/unlawful transfer which was intentionally approved by Defendants [Lozano] and [Pacheco] as elected officials." Id. Plaintiffs allege that Willoughby became a deputy city attorney for Baldwin Park months after selling plaintiffs the license for $900,000. Id. They further allege that Willoughby and Tafoya

---

[7] Plaintiffs allege that Tier One Consulting is the same firm that Willoughby, Galvan, Tafoya, and others "had formed to 'negotiate' development agreements with the [City] through known associates that would funnel bribes to the elected [officials] including [Pacheco]." Dkt. 81 at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

collected exactments from plaintiffs between 2018 through 2022 by threatening to cancel their license. Id. at 7-8.

Plaintiffs additionally argue that collateral estoppel bars Pacheco from challenging the facts established in his plea, including that he "conspire[ed] with [Tafoya] and others to utilize 'consultants' who were known associates who would fabricate 'negotiations' of development agreements on behalf of unsuspecting applicants." Dkt. 82 at 4-5, 6. They contend that Lozano perpetrated fraud on plaintiffs, and the community, by releasing false media statements about the City's cannabis industry. Id. at 6-7. Finally, plaintiffs assert that Tafoya, as city attorney, created a process whereby "consultants" "negotiated" DAs, such as the "sham agreement" sold to plaintiffs. Dkt. 83 at 6.

In reply, Lozano and Pacheco argue that plaintiffs rely on plea deals to blame them for "any and all nefarious cannabis related activity in the City," even though the transfer of the DA at issue does not involve them. Dkt. 86 at 8-9. They further argue that collateral estoppel does not apply since this action does not concern the four marijuana companies or bribery described in the Pacheco plea deal. Id. at 8-9.

As set forth in the Court's November 27, 2023 order, "[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004).

It appears to the Court that it is premature to dismiss plaintiffs' fraud claim based on the allegations in the TAC. Plaintiffs have alleged that Morales committed notary fraud and that Tafoya and Galvan reassured plaintiffs that plaintiffs should not worry about the status of Tier One, that the DA would be transferred to plaintiffs, and that Galvan would refund plaintiffs. Thus, the Court finds that the question of whether each defendant committed fraud in connection with the transfer of the DA is better decided on a motion for summary judgment. Accordingly, the Court **DENIES** defendants' motions to dismiss plaintiffs' fraud claim.

F.    Defendants' Motions to Strike

Because the Court struck paragraphs 205-13 and Exhibit I of the SAC, all defendants, with the exception of Willoughby, argue that the Court should strike the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                      'O'

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

substantively identical paragraph 376 and Exhibit I in the TAC, which refer to Galvan's indictment. Dkt. 72 at 15; dkt. 73 at 18; dkt. 75 at 15; dkt. 76 at 17. Defendants assert that the Court should further strike paragraphs 175 and 204-05 because they "attempt to impute liability on Tafoya due to inferential ties to Galvan and FBI raids on unpled matters." Dkt. 72 at 15; dkt. 73 at 18-19; dkt. 75 at 15-16; dkt. 76 at 17. Finally, if the Court dismisses plaintiffs' fraud claim, defendants argue that the Court should strike paragraphs 24-25 and Exhibits G (Chavez plea deal) and H (Pacheco plea deal) because the justification of plaintiffs' delayed discovery of fraud would no longer prevent striking them. Dkt. 72 at 15; dkt. 73 at 19; dkt. 75 at 16; dkt. 76 at 18.

Plaintiffs disagree that Exhibit I and paragraph 376 of the TAC are "substantively identical to stricken paragraphs 205-213 and Exhibit I of the SAC." Dkt. 79 at 2; dkt. 80 at 2; dkt. 82 at 2; dkt. 83 at 2. Plaintiffs explain that Exhibit I, which is the September 13, 2023 indictment of Isaac Galvan in USA v. Isaac Galvan, "sheds light on the collusion between Galvan, Pacheco and Tafoya as it relates to the commercial cannabis program within the [City] and supports plaintiffs' allegations of malfeasance, conspiracy and collusion amongst the elected[.]" Dkt. 79 at 2-3; dkt. 80 at 2; dkt. 82 at 2; dkt. 83 at 2. Further, plaintiffs argue that the FBI raid and connections between Tafoya and Galvan are relevant to the City's "knowledge of conflicts" and failure to investigate Tafoya and other related information. Dkt. 79 at 16; dkt. 80 at 8; dkt. 82 at 9; dkt. 83 at 10.

In reply, defendants argue that plaintiffs do not allege that the City knew about the FBI raids at Tafoya's office and house or that Tafoya's wife worked for Compton. Dkt. 84 at 5; dkt. 85 at 4; dkt. 86 at 4-5; dkt. 87 at 3-4. Moreover, defendants assert that Exhibits G, H, and I concern alleged bribery rather than the transfer and selling of a DA, which is the subject matter of this case. Dkt. 84 at 5; dkt. 85 at 5; dkt. 86 at 5-6; dkt. 87 at 4. Thus, defendants argue that plaintiffs cannot substantively rely on Exhibits G, H, and I. Dkt. 84 at 5; dkt. 85 at 5; dkt. 86 at 6; dkt. 87 at 4.

It does not appear to the Court that Galvan's indictment or paragraphs 175 and 204-05 are pertinent to any of plaintiffs' claims. Rather, these allegations appear to be superfluous. While the Court declines to strike paragraphs 24-25 from the TAC, it finds that it would be appropriate to strike Exhibits G (Chavez plea deal) and H (Pacheco plea deal). Accordingly, the Court **GRANTS IN PART and DENIES IN PART** defendants' motions to strike, and strikes paragraphs 175, 204-05, 376, and Exhibits G, H, and I from the TAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:23-cv-00384-CAS (PVCx) | Date | March 15, 2024 |
|---|---|---|---|
| Title | DJCBP CORPORATION, ET AL. V. CITY OF BALDWIN PARK, ET AL. | | |

### G.    Defendants' Requests for Sanctions

The Court denies defendants' requests for sanctions at this time, but reserves judgment on sanctions for decision at the conclusion of the case.[8]  See dkt. 74 at 16-17; dkt 76 at 3; dkt. 84 at 3-4; dkt. 85 at 7; dkt. 86 at 2-4; dkt. 87 at 2-3, 7; dkt. 88 at 7-8.

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motions to dismiss plaintiffs' claim for inverse condemnation and claim for Monell liability, with prejudice.  The Court **DENIES** defendants' motions to dismiss plaintiffs' claim for fraud and claim for negligence.  The Court **GRANTS IN PART and DENIES IN PART** defendants' motions to strike.  Finally, the Court dismisses plaintiffs' first claim for a writ of mandate against the City and request for a preliminary injunction without prejudice.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[8] Willoughby further requests that plaintiff DJCBP Corporation be dismissed because plaintiffs have never clarified the relationship between plaintiff Ju and plaintiff DJCP Corporation, and "there is nothing within the complaint that shows that [p]laintiff DJCBP Corporation [] is entitled to relief."  Dkt. 74 at 7-8.  Because plaintiffs failed to address this argument in their opposition, Willoughby argues that plaintiffs have consented to the dismissal of plaintiff DJCP Corporation's claims.  Dkt. 88 at 4.  Willoughby also requests that the Court sanction plaintiffs' counsel for maintaining these claims.  Id. at 5.